UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NICOLE M. SHELBY,

        Plaintiff,

    v.                                    CAUSE NO.: 3:20-CV-328-TLS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

        Defendant.

## OPINION AND ORDER

The Plaintiff Nicole M. Shelby seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

On July 11, 2018, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on May 10, 2018. AR 10, ECF No. 14. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on December 5, 2019. *Id.* On January 3, 2020, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 10–20. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On April 22, 2020, the Plaintiff filed her Complaint [ECF No. 1]. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 18, 19, 22.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 10, 2018, the alleged onset date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of congestive heart failure, hypertension, and an obese body habitus. AR 12.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

2

ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listing 4.02. AR 13.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ found that the Plaintiff had the RFC to perform sedentary work,

> except [she] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl[;] can occasionally work in extreme temperatures, humidity and wetness, and in dust, odors, fumes, and pulmonary irritants[;] can never climb ladders, ropes, or scaffolds, work at unprotected heights or around moving mechanical parts. [E]very 60 minutes, she must be allowed to shift positions, or alternate between sitting and standing for one to two minutes at a time while remaining on task.

AR 13. The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work. AR 18.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). The ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of document preparer, address clerk, and ticket taker. AR 18–19. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard

and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

## ANALYSIS

The Plaintiff alleges disability based on heart failure. She argues that the ALJ erred both in considering Listing 4.02 and in formulating the RFC by failing to properly consider the June

28, 2019 assessment of treating cardiologist Dr. Lu, which provides: "Nonischemic dilated cardiomyopathy with ejection fraction of 25% status post ICD implantation." AR 636. Remand is required for the ALJ to consider the effect of this assessment on the disability determination.

1.     *Relevant Medical Background*

The Plaintiff was treated for shortness of breath and facial swelling in May 2017. AR 343–44, 352. She was hypertensive and had an ejection fraction of 25%. AR 343.

From May 11 through May 16, 2018, the Plaintiff was treated for congestive heart failure and supraventricular tachycardia after several weeks of worsening cough and congestion. AR 361, 372. Her examination revealed findings consistent with mild pulmonary edema and stable cardiomegaly. AR 361, 391. An echocardiogram showed an ejection fraction of 25–30%. *Id.* On May 15, 2018, the Plaintiff received an Implantable Cardioverter-Defibrillator (ICD). AR 363, 404. She was discharged in medically stable condition the following day. AR 363.

On June 7, 2018, the Plaintiff returned to the hospital due to nausea, vomiting, and epigastric discomfort, which she said started when her pacemaker was implanted. AR 442. On June 9, 2018, the Plaintiff had her gallbladder removed. AR 454. On June 22, 2018, the Plaintiff returned for abdominal pain, though she was diagnosed with recurrent atrial flutter with rapid ventricular response and systolic and diastolic congestive heart failure with an ejection fraction of 30%. AR 507, 510–12. In July 2018, the Plaintiff reported frequent cough and daily palpitations with shortness of breath. AR 319. She was diagnosed with atrial flutter and underwent an atrial tachycardia ablation by Dr. Fei Lu on July 18, 2018. AR 576. On discharge, the Plaintiff's heart failure symptoms had "significantly improved." AR 558.

On December 6, 2018, a transthoracic echocardiogram showed a mildly increased left ventricle, moderate concentric left ventricular hypertrophy, moderate global left ventricular

hypokinesis, Grade I diastolic dysfunction, mildly reduced right ventricular global systolic function, mild mitral regurgitation, and a left ventricular ejection fraction of 35%. AR 627.

On June 18, 2019, the Plaintiff was seen by her cardiologist, Dr. Lu, for an annual examination and reported dyspnea on exertion. AR 635. Dr. Lu's report showed a history of "congestive heart failure with ejection fraction of 25%." *Id.* At the time of the visit, the Plaintiff had occasional flutter but no significant sustained tachycardia, her defibrillator showed no events since October 2018, her blood pressure was poorly controlled, and she denied chest pain, dizziness, or syncope. *Id.* Under "Assessment and Plan," Dr. Lu wrote: "Nonischemic dilated cardiomyopathy with ejection fraction of 25% status post ICD implantation." AR 636.

On November 11, 2019, Dr. Lu filled out a cardiac medical source statement. AR 644. Dr. Lu diagnosed the Plaintiff as Class III under the New York Heart Association Functional Classification and indicated that her prognosis was "stable." *Id.* In support, Dr. Lu identified clinical findings of an ejection fraction of 25% and a blood pressure rating of 200/110. *Id.* Dr. Lu listed associated symptoms of exertional dyspnea, exercise intolerance, peripheral edema, and palpitations. *Id*. In response to the question to what degree the Plaintiff can tolerate work stress, Dr. Lu checked the box for the most restrictive answer: "Incapable of even 'low stress' work." AR 645. Dr. Lu assessed the following functional limitations in a competitive work situation: walking half a city block; standing or walking less than two hours; sitting for about two hours; ability to shift positions at will; and ability to take unscheduled breaks to lie down or sit quietly. *Id*. Dr. Lu opined that, due to edema, the Plaintiff would need to elevate her legs at heart level with prolonged sitting and, if she were in a sedentary job, would need to elevate her legs fifty percent of an eight-hour workday. AR 646. The Plaintiff could occasionally lift and carry less than ten pounds, twist, stoop, crouch, squat, and climb stairs and needed to avoid even moderate

exposure to the listed environmental irritants. *Id*. The Plaintiff was likely to be off task more than twenty-five percent of the time and miss more than four days of work a month. AR 647.

2.  *Legal Framework at Step Three*

At step three of the sequential anlaysis, an ALJ considers the objective medical findings and other specific requirements to determine if the claimant meet the criteria of a given listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 404.1525(c). When all the criteria of the listing are satisfied, the claimant is deemed presumptively disabled and entitled to benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(d)). If not all the criteria are satisfied, the claimant can nevertheless be found disabled under the listing if the record contains "other findings related to [the] impairment that are at least of equal medical significance to the required criteria," 20 C.F.R. § 404.1526, which requires an expert's opinion on the issue, *Minnick*, 775 F.3d at 935. An ALJ may rely solely on the state agency reviewing physicians' opinions "and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

3.  *Listing 4.02*

The text of Listing 4.02 provides:

4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met *when the requirements in both A and B are satisfied*.

    A.  Medically documented presence of one of the following:

        1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm *or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)*; or

        2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection

7

> fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
> 1. *Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual*; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to [one of four listed events].

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02 (emphasis added).

*4.     The ALJ's Step Three Determination*

Finding that the Plaintiff's impairments do not meet or medically equal Listing 4.02, the ALJ provided the following reasoning:

> [T]he undersigned recognizes that the initial records, when the claimant was noncompliant with her regimen and experiencing exacerbatory complications (see generally Exhibit 2F). Yet, post implantable cardioverter defibrillator (ICD) and ablation the claimant's echocardiogram as noted in Exhibit 5F, dated less than 5 months after her cardiac treatment, included an ejection fraction of 35% and ventricular dimensions less than the needed LVED 6cm, or the LVPW thickens of 2.5cm. In fact, this December 2018 echocardiogram was considered by the initial (January 2019) and reconsideration (February 2019) State agency medical consultants in Exhibits IA, 2A, 5A, and [6A], who opined that the claimant's impairments, even when considered in combination, do not equal any listings. The undersigned found these assessments persuasive and well supported by the longitudinal record as longitudinal record included on follow up where her implantable cardioverter defibrillator (ICD) review was normal evidencing no events since the October 2018 exam (see generally Exhibits 5F, 7F).

AR 13.

5. *Discussion*

The Plaintiff argues that the ALJ failed to provide a logical and accurate rationale for his conclusion that the Plaintiff's systolic congestive heart failure did not meet or medically equal Listing 4.02. First, the Plaintiff contends that the ALJ's rationale for concluding that the Plaintiff does not meet the "A criteria" of an "ejection fraction of 30 percent or less during a period of stability" is based solely on the December 2018 echocardiogram indicating an ejection fraction of 35%. Specifically, the Plaintiff argues that ALJ failed to consider treating cardiologist Dr. Lu's June 28, 2019 assessment of "Nonischemic dilated cardiomyopathy with ejection fraction of 25% status post ICD implantation." In response, the Commissioner reasons that the statements in the June 2019 treatment record regarding an ejection fraction of 25% are pre-implant historical references only. However, the Commissioner quotes only the portion of the report citing that the Plaintiff has a "history of . . . congestive heart failure with ejection fraction of 25%." Def. Br. 8, ECF No. 19. Neither the Commissioner nor the ALJ specifically address Dr. Lu's current assessment quoted above, which appears to suggest that following the ICD implantation, the Plaintiff continues to have an ejection fraction of 25%.[2] Although it is unclear how Dr. Lu's assessment would affect the listing analysis, it is not this Court's role to re-weigh the evidence, resolve conflicts in the evidence, or substitute its judgment for that of the ALJ. The ALJ's failure to engage with Dr. Lu's assessment in the June 2019 report of "[n]onischemic dilated cardiomyopathy with ejection fraction of 25% status post ICD implantation" means that the Court cannot trace the logic of the ALJ's reasoning.

---

[2] Later in the decision, the ALJ considered Dr. Lu's November 2019 finding that the Plaintiff's symptomology was "stable" and reasoned that Dr. Lu "was relying on an old pre-operative echocardiogram citing an outdated ejection fraction value that was no longer valid." AR 16. However, as argued by the Plaintiff, the ALJ provided no record citation in support.

Second, the Plaintiff notes that, because the ALJ found that the Plaintiff did not meet the "A criteria," the ALJ did not consider the "B criteria" of Listing 4.02. The Plaintiff argues that the evidence of record supports a finding that she exhibited "persistent symptoms" as described in Listing 4.02(B)(1) because the symptoms of her heart failure seriously limit her ability to independently sustain activities of daily living. She notes Dr. Lu's November 2019 medical source statement that she experiences palpitations, exertional dyspnea, and peripheral edema and opinions as to her "exercise intolerance." AR 644. This is consistent with the Plaintiff's testimony that her symptoms interfere with her ability to independently perform activities of daily living: "Basically I can't stand on my feet too long, I can't sit for too long, my legs and feet swell up really bad. I have a hard time breathing a lot. I get winded really easy." AR 48–49. She also reported in her adult function report that she has difficulty engaging in activities as simple as dressing herself due to an inability to bend, which causes dyspnea. AR 285. In response, the Commissioner suggests that the ALJ's discussion of the medical records on pages 13–18 of the decision constitutes a finding on the issue of "persistent symptoms of heart failure" for purposes of Listing 4.02. However, the ALJ did not make that connection between the RFC analysis and the listing criteria. *See Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) ("*Chenery* also forbids the Commissioner from relying at this stage on a rationale that was not used by the agency." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))).

Finally, the ALJ relied on the January and February 2019 opinions of the state agency reviewing physicians to find that the Plaintiff does not meet a listing, yet those physicians could not have reviewed Dr. Lu's subsequent June 2019 assessment. It is unclear whether their opinions would have changed in light of that later record. *See, e.g.*, *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (reasserting "that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny" (citations omitted)).

Thus, the Plaintiff argues that, when her persistent, limiting symptoms are combined with an ejection fraction below 30%, she meets Listing 4.02. "[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (explaining that the ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected"). Because the ALJ did not discuss Dr. Lu's June 2019 assessment of "[n]onischemic dilated cardiomyopathy with ejection fraction of 25% status post ICD implantation," the Court cannot discern how the ALJ interpreted the statement, if at all, and, as a result, cannot determine whether the decision is based on substantial evidence.

Regarding the Plaintiff's other arguments, the ALJ will have the opportunity on remand to determine whether an updated medical opinion is necessary, consistent with SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). If the ALJ's analysis proceeds beyond step three, the ALJ will also be able to reconsider Dr. Lu's June 2019 assessment in combination with Dr. Lu's subsequent December 2019 opinion in the context of the RFC determination.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 18] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on August 10, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT